Good morning ladies and gentlemen. We're ready to hear argument now in the case of United States against Gibbs. Mr. Roy. Thank you judge. Good morning. May it please the court opposing counsel. My name is Michael Roy on behalf of defendant appellant Edward Gibbs. Our position is the district court plainly erred with two of the conditions of supervised release but from the outset we recognize or at least we think that maybe the biggest barriers are the procedural ones. So I'd like to focus first on whether there was a waiver under Flores. Unless this court has anything specific it would like me to jump to. It'd be a good place to start. Okay so obviously recognize there's not too many plain error conditions of supervised release cases these days since Flores. However Flores did not change the basic rule or the basic distinction between waiver and forfeiture. The rule is still forfeiture is an oversight. Waiver requires some sort of intentional relinquishment and that's why our position is the fifth factor of Flores. The requirement that there needs to be something in the record to show an intentional or strategic decision is the most important. Well here we have Judge Young asking the question do you desire me to go over the supervised release conditions? That's correct and that would satisfy one of the other factors of Flores and we I would disagree with that. It shows intentionality on its own. I think that's closer to the quick response to a rote colloquy. I think looking at the transcript as a whole it's not even clear to me that the trial attorney understood that he could challenge the conditions of supervised release. He said that this is a limited hearing we're just here to pick a number based on the guidelines range. He would have received the pre-sentence report that outlined those supervised release conditions as well as the justifications for each one of those supervised release conditions. So is it the contention now that he would not have understood that there was an opportunity to object to the PSR? Yes that would be our position and I think it's looking at him saying right we think it's a limited hearing that we're doing. Also the fact that he didn't familiarize himself enough with the record to even realize that it had been a downward variance at the previous sentencing. I mean this was three years since the previous sentencing. He said oh you gave bottom of guidelines last time give bottom again for the same reasons. Why does your problem not start with the previous sentencing? Our position is the previous sentencing is just not part of it. I mean for several reasons. First it's a complete resentencing and mobily in several other cases this court has emphasized that usually supervised release conditions prison term they're a package deal. So you vacate one you send both back for remand. So it's it's a blank slate as far as we're concerned except for things that would be affected by law of the case or scope of the mandate like they wouldn't be able to relitigate the drug quantity but but other parts were still on the table. If he had committed new violations in or if he had pled guilty to a different crime within the two sentencings the government certainly could have brought that in. But does your argument on with respect to the sentencing with respect to the conditions does that is that tied to the length of incarceration? In other words if there was an enhancement right if you if you didn't raise a two-level gun enhancement at the original sentencing you appealed and you appealed something other than two level gun enhancement you couldn't then raise it at the re-sentencing. Right so it wasn't raised at the first sentencing it wasn't raised on appeal it goes back for resentencing you can't then raise the gun enhancement. Well I think supervised release is fundamentally different than aspects of the guideline calculation mainly because it's a moving target that's why there is the ability to move to modify conditions of supervised release. What would have been appropriate in 2020 isn't necessarily appropriate in 2020. So doesn't that doesn't that doesn't that go the other way though if there's the opportunity to revise conditions of supervised release why should they be like the judge's sentence in term of imprisonment of a certain number of months? I believe you're alluding to maybe pronged for of the plain error relief or? No I'm no I'm alluding to waiver. Why if you if you don't raise the condition of supervised release in the first sentencing okay here in the first sentencing there were conditions of supervised release that were discussed. Sure. Right so we could find that this condition was waived with respect to the first sentencing. I think if on the first appeal if our office had raised the supervised release conditions but no doubt they would have been waived on that appeal. Right but it hadn't. Right. So then it gets it goes back. Well it could I would say we couldn't have on the first appeal actually. Right because it wasn't raised. Exactly. So why do you get the opportunity to do it in the second sentencing if you didn't do it? Because that is the rule for a Mobley and from other cases that once you vacate the prison sentence or vice versa if you vacate a condition you open up both for reconsideration because you want to see what the judge's intent is as a whole for the complete sentence. I mean this rule usually comes up in the opposite context where a condition was vacated on appeal and there's a question of whether the judge would have imposed more prison time and put in the condition to go. I wonder why your client cares about this. Right. We're having this waiver versus forensic argument about a condition that is the equivalent of a Bronx cheer. It has absolutely no content. It says you can't you must tell unspecified people about unidentified things. Right. It has no content and so it can't be violated and so who cares? Why are we here having this debate about something that cannot conceivably affect your client? Well I would disagree that it can't be violated. I think that the vagueness of it leaves a lot of discretion to the probation officer. No. The probation officer has discretion no matter what you do. But the probation officer has to present a case for revocation to the judge and the judge will pick this up and say this is content-free. Go away. Right. How does it harm your client? I don't know that it's necessarily content-free. I mean it's it's telling him he has to, if his probation officer directs him, notify people of something and he... Notify people about the cast list and the Wizard of Oz. Right. The probation officer says that and the defendant never notifies him about the Wizard of Oz and moves to revolt. Nothing's going to happen. And I mean I agree that maybe you know predicting down the line the actual revocation hearing, but if there was a condition now that said he would be required to tell people about the cast of cats or something, we would challenge that too on appeal because it creates that uncertainty and it's not just about what's going to happen at the later revocation hearing. He's also entitled to know what he is and is not allowed to do or is not required to do. Let's sidestep. If we accept that this was not waived but potentially forfeited. All right. What about the colloquy with Judge Young, Mr. Gibbs and his counsel suggest or looking at these two conditions would attack the fairness or integrity of the proceeding? Sure. And as we mentioned in the briefs, this court has been a bit inconsistent in how it's discussed prongs three and four when it comes to... You're being kind. Thank you, Judge. However, I think that that prong four is exactly the explanation maybe for inconsistency in that unlike most appellate rules, prong four is is like a discretionary rule for an appellate court. And if it comes down to the discretion of this court, obviously we're going to ask this court to exercise its discretion. But I think there's a good argument too. And really the issue comes to whether a motion under 3583 is going to be an appropriate substitute or not. And I think there's several problems with that. First and foremost, he won't have counsel if he files a motion to modify. Just because I filed this appeal, he now has a guideline to work off of, but he wouldn't normally. And it's not really more efficient for this court to direct everything that way because then you get more pro se motions, more pro se appeals. Without counsel, you don't have the filter of removing the frivolous challenges from the supervision conditions. And also there's the possibility of then having multiple appeals where if the first appeal in Anders' brief needs to be filed, it doesn't really necessarily... Can I take you to another question? One of your complaints has to do with the condition that deals with psychoactive substances. In your view, is coffee in that status? Our view is yes. Chocolate? Yes. I'll be asking this of the prosecutor as well. It's hard to believe. Chocolate is certainly psychoactive. It's hard to believe the district judge meant to prevent Mr. Gibbs from ever having chocolate. Well, we'll see. I mean that's exactly our position. We recognize though it has to not just be vague, but also plain. And so we mostly are relying on, we recognize the mood altering cases, which are slightly different. Coulson's the only case that... Well, chocolate and caffeine are both in that category too. Exactly. So actually is dinner. If you don't have dinner, you tend to get in a foul mood. I absolutely agree, Judge. And I position primarily this too that the inclusion of glue signals to the probation officer that you're not just looking for street drugs, designer drugs. You're rummaging through the pantry. You're rummaging underneath the kitchen sink to find household items that may be also qualified. I see my time is up. Thank you. Thank you, Mr. Boyd. Mr. Clark. Colin Clark on behalf of the United States. Thank you to the law school for letting us come here today. This court should decide this case on the issue of waiver and find the claims waived. I think the surest, simplest reason to do that is that Jonathan Chance, the defendant's lawyer, characterized the second sentencing hearing as a limited one. And he was laser focused on getting a lower prison sentence. And if he had spent time nitpicking the supervisor... Let me tell you why I wonder whether any of this matters. It's a different reason from my question to Mr. Roy. The statute says that a judge may change the conditions of supervised release at any time. So presumably, Mr. Gibbs could file such a motion today or in two years. Would you be arguing in response to that motion that he has waived any opportunity to make it? No. Okay, so he can get this reviewed. The only question is whether it's now or after some further procedure. And since that's the question on the table, why not now? Why not now because it's not the regular process? A lot of these... Let's go back to... Direct appeal is part of the regular process. What I asked of Mr. Roy was essentially, why not later? Who cares? I'm asking you, why not now? We live in this world, this curious world, where you can get reviewed on appeal and two years from now and five years from now and ten years from now. You're about to ask me about chocolate and blueberries. Oh, I'll get there. But it goes to this point, we were not able to make a record. We did not have the opportunity to make a record. And as this is a vagueness challenge, if you look at the Hunt case where the vagueness challenge... Actually, I wasn't at the moment thinking about psychoactive substances. I was thinking more about the notify unspecified people about unnamed things, right? That's not going anywhere. Whether we get rid of it now or in two years or in five years, does anything turn on that? I think what turns on that is that by forcing pro se or counsel defendants to file motions in the district court will force them to do that as opposed to... It doesn't force them to do it. You told me that there would be no waiver if tomorrow morning Mr. Gibbs files a motion saying, please set aside that condition. That is correct. And so it doesn't force him to raise anything in sentence. Force is the wrong word. Yeah. I take that back. But I think that by neglecting the procedural niceties of appellate review creates problems not only in limitations of the record but it also encourages more claims based on issues that were not raised below. This is a court of review, not a first view. And so encouraging... The Supreme Court says that, but we are the court of appeals. You are still generally speaking a court of... I mean... The Supreme Court held as a constitutional matter in a case called Marbury against Madison that it is not a court of first view, but we are. I'm going to understand that this court is always going to have discretion to decide whatever decides what's the third or fourth prong of plain error review or that. And so I can only say that I know how I think the court should have used its discretion, but beyond that I really have nothing to say. Is it waived? Is this argument waived? Yes, it is very much waived. It's super waived. And it's waived because... Here's why. It's waived because Chance would not have been able to make the argument he made if he went around and nitpicked these supervised release conditions. Why not? Because he characterized... His argument was that lower the sentence... This is a limited hearing and because it's a limited hearing, let's focus on his good conduct and lower the sentence. If you look at the Hunt case... I want to go back to the words that you used. That he could not have challenged... He could not challenge supervised release conditions in this hearing. That is not our position. So he chose not to. So you misspoke when you said that he could not. I must have misspoken. If I did not... If I said that, I misspoke. He chose not to do that because his... He chose the strategy to make it a limited issue on the amount of prison time. So this is where we're going to Flores saying that this was an intentional strategy. Yes. And I see the difference between strategy and intentionality being strategies. He knew the scope of the tribal issues and intentionality meaning he made a mistake and he made his... And he made the argument that he made. But in either case, it would have screwed up the strategy he chose to make these arguments about the supervised release conditions. So whether he understood what the scope of the tribal issues were is irrelevant. And if you look at the Canfield case, affirmative mistakes are not the same as negligent omissions. And this... To find forfeiture, you must find a negligent omission. There was no negligent omission here because you can't say this is a limited hearing, but let's go line by line on the supervised release conditions. And he did know. For whatever it's worth, he did know about what was tribal and what wasn't. As you pointed out, they were all in the PSR. And also, the judge asked him on pages 17 and 18 whether the defense had any objections to the supervised release conditions. If nothing else, that put him on notice that he could make an objection. It would be silly for a court to say... Can the judge go a little further and also ask the question, have you reviewed these conditions with your lawyer? Yes, that's on page 17 of the second sentencing hearing transcript. And the answer to that question was yes. Yes, they had reviewed it, and they were both asked individually, Chance and Gibbs, whether they had objections, and they both said no. And so they chose not to raise this issue. And the reason why I keep pointing to Hunt is because in Hunt, it was the same script. Please give us a lower sentence. And that strategy was used to the exclusion of possible other arguments the defense attorney could have made. A defense attorney can always make 1,500 arguments, but by watering down your arguments, by inundating the judge with all of these points, you might lose the main goal. And here, it appears from the record, the main goal was a low sentence. And he got exactly what... He got more than what he asked for. And so for those reasons, it should be... This court should find it waived. But even if you don't find it waived, and even if you want to deal with plain error, as to the psychoactive substances condition, the law is not settled, or at least it favors the United States. But isn't there tons of case law that suggests that supervised release conditions are intentionally vague, so that when an offender is released from prison, the district court then has the flexibility to ensure that the supervised release conditions that were put in place at the time of sentencing can now be applicable to the offender who has now been released on those conditions. For that reason, this court should find that the third and fourth prongs of plain error review are not satisfied, because like you point out, this could be fixed. What can be fixed as soon as the mandate returns to the district court. How would you fix the psychoactive and dangerous substances condition? I understand it when district judges put in things like illegal substances, or psychoactive and illegal substances. But think about chocolate. Chocolate is certainly psychoactive, and it's dangerous if you eat too much. You'll die of heart disease. So can this defendant eat chocolate or not? Yes, chocolate is not covered. What makes you sure of that? For a few reasons. One, the court, I believe it's in Siegel, said that this kind of language would eliminate chocolate. Indeed, we mentioned coffee in that case too. Yes, and forgive my Latin pronunciation, the nociter socius canon of construction, the examples listed in the condition limit the reach of the word psychoactive. And because of those examples, the word psychoactive is not given its plain dictionary definition. It's given the limited definition that would fit those examples, and that's why those examples are there. If they wanted the simple dictionary definition, they would have not put the list of examples. Also, it requires an impairment of physical or mental functioning. Coffee, blueberries, chocolate do not impair physical or mental functionings unless you don't give... A lot of people are impaired by chocolate when they will read. The impairment that, looking again at the list of examples, the impairment that it must have meant is akin to driving drunk. Because again, the list of examples give the kind of impairment that we're talking about, and the glue we're talking about is not Elmer's glue, but the solvent glue that one can huff. And I see that I'm out of time. Thank you, unless there are no further questions. Thank you for your time. Thank you very much. Thanks to both counsel. The case is taken under advisement.